# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JEFFREY R. GROTH,**
        **Petitioner,**

    v.                                                                           **Case No. 06-C-858**

**PAMELA WALLACE,**
        **Respondent.**

## DECISION AND ORDER

Pro se petitioner Jeffrey R. Groth seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted in state court of second-degree reckless homicide while armed with a dangerous weapon as a party to a crime and related offenses. In his petition, he contends that he was denied due process in three respects: (1) the state trial court improperly instructed the jury; (2) the prosecutor made an improper closing argument; and (3) the state adduced insufficient evidence to support a conviction.

After the jury found petitioner guilty, the trial court determined that it had instructed the jury improperly and ordered a new trial on one count. On direct appeal, the state court of appeals reinstated the conviction, holding that the trial court had not erroneously instructed the jury. The court of appeals did find that the trial court had committed a sentencing error and remanded the case for re-sentencing. The state supreme court denied review. After the trial court re-sentenced petitioner, petitioner again appealed, but the state court of appeals affirmed his conviction, and the state supreme court again denied review.

I may grant habeas relief only if I find that the decision of the last state court to address the merits of the issue was "contrary to or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), or was based on an "unreasonable determination of the facts in light of the evidence presented,"

id. § 2254(d)(2). However, if a habeas petitioner raises an issue that he did not properly present to the state courts, I may not address the merits of the issue unless petitioner shows cause and prejudice. Gomez v. Jaimet, 350 F.3d 673, 677-79 (7th Cir. 2003).

## I. FACTS

The state court of appeals adopted the trial court's statement of the facts, which is as follows:

> Groth's convictions (along with [those of] three other co-defendants who pled guilty) stem from the early A.M. February 25, 2000 shooting death of Joseph George outside the Roadhouse Tavern in the City of Oak Creek, Milwaukee County. Groth arrive[d] at the bar on the evening of February 24th with Kevin Dane, Rodolph Lanaghan (the actual shooter) and two other co-defendants, Bradley Debraska and Kevin Ziolkowski.
>
> Groth planned to confront men whom he believed had attacked him outside the bar the previous week, and the group brought weapons to the scene, including a bat, a broken pool cue, brass knuckles and an inoperable .22 caliber handgun. [Groth] also requested that a friend of his, Fausto "Huffy" Delgado, bring his .38 caliber handgun to the bar. Groth secured that gun and later handed it to Lanaghan. It was that .38 which killed Joseph George.
>
> In the interim various meetings were held in the men's bathroom between the antagonists on each side, and many thought those meetings had resolved the differences. However, Debraska testified that Groth still wanted revenge for the beating he had sustained the prior week. Testimony revealed that Lanaghan related to Groth that the latter did not ["]have the balls to use it (the gun) ["] and requested the gun from Groth. After giving the gun to Lanaghan, Groth left the bar and pulled his car nearer the entrance "in case something happened." He kept the engine running.
>
> Debraska then provided Lanaghan with a jacket with a hood to assist the shooter in concealing his identity. Lanaghan then started firing at the bar's entrance at people exiting. Danny Oswald, one of the principal antagonists of Groth, was right next to Joseph George, and this victim, an innocent bystander, unfortunately received the fatal shot presumably intended for Oswald.
>
> Groth then drove the group to Ziolkowski's home, where they attempted to clean and hide the gun. However, they were all picked up shortly thereafter by the police.

State v. Groth, 258 Wis. 2d 889, 897-98 (Ct. App. 2002).

## II. DISCUSSION

**A.** **Jury Instruction**

The court of appeals analyzed the jury instruction issue as follows:

> At the jury-instructions conference, the prosecutor requested Wis JI-Criminal 406, modified to reflect the appropriate crimes. So modified, and as ultimately presented to the jury, the instruction states, in part:
>
>> Section 939.05 of the Criminal Code of Wisconsin provides that whoever is concerned in the commission of a crime may be charged with and convicted of the commission of the crime although he did not directly commit it.
>>
>> The defendant is charged with being concerned in the commission of second degree reckless homicide while armed with a dangerous weapon by aiding and abetting the person who directly committed it.
>>
>> A person who intentionally aids and abets the commission of one crime is also guilty of any other crime which is committed as a natural and probable consequence of the intended crime.
>>
>> Before you may find the defendant guilty, you must be satisfied beyond a reasonable doubt that the defendant intentionally aided and abetted the commission of the crime of second degree recklessly endangering safety while armed with a dangerous weapon, that second degree homicide while armed with a dangerous weapon was committed and that under the circumstances second degree reckless homicide while armed with a dangerous weapon was a natural and probable consequence of second degree recklessly endangering safety with a dangerous weapon.
>>
>> . . . .
>>
>> Finally, consider whether under the circumstances second degree reckless homicide while armed was a natural and probable consequence of second degree recklessly endangering safety while armed.
>>
>> A crime is a natural and probable consequence of another crime if in light of ordinary experiences it was a result to be expected, not an extraordinary or surprising result.

> The probability that one crime would result from another should be judged by the facts and circumstances known to the defendant at the time the events occurred.
>
> If the defendant knew or if a reasonable person in the defendant's position would have known that the crime of second degree reckless homicide while armed was likely to result from the commission of second degree recklessly endangering safety while armed, then you may find that second degree reckless homicide while armed was a natural and probable consequence of second degree recklessly endangering safety while armed.

Groth objected to the instruction. He did so, however, arguing only that the standard instructions on second-degree reckless homicide while armed, party to the crime, without any additional instruction involving second-degree recklessly endangering safety, would be easier for the jury to understand and apply. He did not argue that the evidence was insufficient to support the State's proposed instruction. He did not argue that second-degree reckless homicide was not a natural and probable consequence of second-degree reckless endangering safety under the circumstances of this case. And he did not argue that any specific language in the State's proposed instruction was inaccurate or confusing. The court granted the State's request.

In his postconviction motion, however, Groth contended that the instructions he had proposed more clearly distinguished his intentional aiding and abetting from Lanaghan's recklessness. Granting Groth's motion, the trial court concluded:

> [Second-degree reckless homicide while armed, party to the crime] is not the natural and probable consequence of second-degree recklessly endangering safety, since there is no evidence as to what [Groth] actually intended. [Groth's] theory was that the weapons brought to the tavern were for self-defense in the event a confrontation occurred. He was not sure what would happen after he provided Lanaghan with the .38 caliber gun.

. . . .

A trial court has broad discretion in instructing a jury but must exercise that discretion in order to fully and fairly inform the jury of the applicable rules of law. State v. Coleman, 206 Wis.2d 199, 212, 556 N.W.2d 701 (1996). Whether a crime charged was a natural and probable consequence of the crime with which a defendant allegedly assisted is a factual issue for the jury. State v. Ivy, 119 Wis.2d 591, 601, 350 N.W.2d 622 (1984). Whether a jury instruction is appropriate, under the given facts of a case, is a legal issue subject to

independent review. See State v. Pettit, 171 Wis.2d 627, 638, 492 N.W.2d 633 (Ct.App.1992).

Whether a jury instruction violated a defendant's right to due process is a question of law subject to our de novo review. Id. at 639, 492 N.W.2d 633. In reviewing a claimed jury instruction error, we do not view the challenged words or phrases in isolation. Id. at 637, 492 N.W.2d 633. Rather, jury instructions "must be viewed in the context of the overall charge." Id. Relief is not warranted, however, unless the court is "persuaded that the instructions, when viewed as a whole, misstated the law or misdirected the jury" in the manner asserted by the challenger to the instruction. Id. at 638, 492 N.W.2d 633.

Wisconsin JI-Criminal 406 defines aiding-and-abetting liability in circumstances under which a person who intentionally aides and abets the commission of one crime is also guilty of any other crime (committed in the course of the intended crime) that is a natural and probable consequence of the intended crime. Here, the prosecutor requested the instruction to link Groth's committed crime (second-degree reckless homicide while armed) to his intended crime (second-degree recklessly endangering safety).

The State's request was perfectly reasonable; the instruction reflected the facts of the case. The trial court's trial decision was correct; its postconviction determination was not.

As the State correctly argues, the evidence of what Groth actually intended-second-degree recklessly endangering safety while armed-was virtually undisputed. Groth and his accomplices, intending to retaliate against someone who had attacked him, came armed to a tavern to confront Groth's assailant. Groth, as the trial court summarized, "secured" the murder weapon and "handed it" to Lanaghan, who shot and killed Joseph George. Groth was waiting nearby as the getaway driver. As the State explains, "Death was particularly foreseeable under the circumstances . . . because the intended crime was not just recklessly endangering safety, but recklessly endangering safety while armed with a dangerous weapon, and the resulting charged crime was second-degree reckless homicide while armed with a dangerous weapon; the dangerous weapon involved was a gun."

The facts of this case, therefore, were perfectly suited to the standards of Wis JI-Criminal 406. Both the intended crime and the charged crime carried the same element of reckless conduct-conduct that creates an unreasonable risk of death or great bodily harm, and the actor's awareness of such risk. See Wis JI-Criminal 1060; see also State v. Asfoor, 75 Wis.2d 411, 427-34, 249 N.W.2d 529 (1977). Indeed, on appeal, Groth accentuates this very point and, primarily, merely argues that the 406 instruction was "confusing ... because it was difficult to apply and served no useful purpose."

-5-
Case 2:06-cv-00858-LA    Filed 10/29/08    Page 5 of 8    Document 23

> The postconviction court concluded that Wis JI-Criminal 406 was improper "since there [was] no evidence as to what the defendant actually intended." We disagree. Indeed, the evidence was overwhelming that Groth intended armed retaliation; he intentionally assisted Lanaghan in obtaining the gun Lanaghan fired into a group of people, killing an innocent victim. Unquestionably, Groth's conduct was reckless; it endangered many people and, as a natural and probable consequence, it was a substantial factor causing Joseph George's death.
>
> Therefore, we conclude that the trial court correctly granted the State's request to utilize Wis JI-Criminal 406 but, in its postconviction decision, incorrectly found fault with its ruling. Accordingly, we reverse the postconviction order granting Groth's motion for a new trial.

Id. at 898-903.

Respondent first contends that petitioner procedurally defaulted the jury instruction issue by failing to present it as a federal constitutional issue to the state courts. See Verdin v. O'Leary, 972 F.2d 1467, 1473-74 (7th Cir. 1992). However, the state court of appeals treated the issue as a due process claim; thus, I will address its merits. See Malone v. Walls, 538 F.3d 744, 756 (7th Cir. 2008). On the merits, petitioner's claim fails. Petitioner does not establish that the instruction in question was contrary to or an unreasonable application of any Supreme Court decision. In fact, petitioner does not cite any Supreme Court decision under which the instruction was even arguably deficient. The instruction did not lower the state's burden of proof or create any impermissible presumptions, see Sandstrom v. Montana, 442 U.S. 510, 521, 524 (1979), and it required the state to establish all of the elements of the charge of being a party to the crime of reckless homicide, id. at 520. See also Solles v. Israel, 868 F.2d 242, 251 (7th Cir. 1989); Feela v. Israel, 727 F.2d 151, 157-58 (7th Cir. 1984); Madden v. Israel, 478 F.Supp. 1234, 1240-41 (E.D. Wis. 1979).

**B.  Prosecutor's Closing Argument**

Petitioner's argument on this point is somewhat unclear, but he seems to contend that the prosecutor violated his right to due process by comparing his conduct to giving matches

and a gas can to a pyromaniac and by incorrectly stating that the door to the getaway car that petitioner drove was open when there was some contrary testimony. The state court of appeals addressed the issue of the prosecutor's argument as follows:

> Similarly, the prosecutor's single misstatement about reasonable doubt was an obvious slip-of-the-tongue, completely countered by the balance of his argument, the defense argument, and the jury instructions.
>
> Groth contends that the prosecutor, in his closing argument, incorrectly stated that he, as the getaway driver, had the car door open for Lanaghan when, in fact, "the only evidence on point was that it was closed until [another accomplice] ran to the car ahead of Lanaghan." Groth, however, fails to explain how this distinction could have made any difference. See Barakat v. DHSS, 191 Wis.2d 769, 786, 530 N.W.2d 392 (Ct.App.1995) (appellate court need not address "amorphous and insufficiently developed" argument). Even assuming Groth's view of the evidence is correct, he has offered nothing to establish that the real controversy was not fully tried or that justice miscarried. See Wis. Stat. § 752.35.

Groth, 258 Wis. 2d at 913.

Respondent argues that petitioner procedurally defaulted this claim by not presenting it as a due process claim in the state courts. I agree. In his arguments regarding the prosecutor's statements in the state courts, petitioner did not mention due process, did not cite any federal cases and did not give the courts any notice that he was making a due process claim. See Verdin, 972 F.2d at 1473-74. Further, petitioner makes no effort to establish cause and prejudice. Even, however, if petitioner had not procedurally defaulted this issue, his claim would fail. This is so because petitioner points to no deficiency in the state court of appeals's decision rejecting the claim.

**C.    Sufficiency of Evidence**

Respondent also argues that petitioner procedurally defaulted his claim that the evidence against him was so insufficient as to violate due process by not presenting it to the state courts. I agree. Petitioner did not make this argument to the state courts. Further,

petitioner does not attempt to establish cause and prejudice. Even, however, if petitioner had not procedurally defaulted this argument, it would fail because he presents no basis for concluding that the evidence was insufficient to support the conviction.

### III. CONCLUSION

Therefore, for the reason stated,

**IT IS ORDERED** that the petition for habeas corpus is **DENIED**, and this case is **DISMISSED.**

Dated at Milwaukee, Wisconsin this 29 day of October, 2008.

/s
LYNN ADELMAN
District Judge